UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


UNITED STATES OF AMERICA,         )
      Respondent,           )
                          )
v.                         )        Nos. 2:15cr16
                          )             2:16cv124
WILLIAM LESTER REECE,        )
      Petitioner.              )


<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the motion of William Lester Reece ("Petitioner" or "Reece") to vacate, set aside, or correct sentence under 28 U.S.C. §2255 , [Doc. 75].[1]  The United States responded in opposition, [Doc. 85], and the Petitioner replied, [Doc. 96].  Also pending are Reece's motions to compel, [Doc. 81], to amend/revise, [Docs. 79, 86], to compel (second), [Doc. 88], and for expedited ruling, [Docs. 90, 97].  The United States responded in opposition to Petitioner's motions to amend and his second motion to compel, [Doc. 95], and Petitioner replied, [Doc. 96].  The matters are now ripe for disposition.

Reece's motions to amend, [Docs. 79, 86], are **GRANTED**, his motions to compel, [Docs. 81, 88], are **DENIED**, and his motions for expedited ruling, [Docs. 90, 97], are **DENIED as MOOT**.  For the reasons set forth herein, the Court has determined, based on the transcripts and records of prior proceedings, that no evidentiary hearing is warranted, and the Petitioner's request for an evidentiary hearing is **DENIED**.  The Court has likewise determined that it plainly and conclusively appears from the motion and the record of prior proceedings that Petitioner is not

---

[1] All document references are to the docket sheet in No. 2:15cr16.

entitled to relief under §2255 and his motion, as amended, will be **DENIED** and **DISMISSED** with prejudice.

## I.     Procedural and Factual Background

Petitioner and Kathy Jean Reece were indicted by a federal grand jury on February 10, 2015, [Doc. 1]. The eleven-count indictment charged the Reeces with various drug offenses related to trafficking in heroin and oxycodone (Counts One-Nine). Petitioner was charged with possession of a firearm in furtherance of the drug trafficking offenses charged in Counts One, Two, Eight and Nine in violation of 18 U.S.C. § 924(c)(1)(A)(Count Ten) and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1)(Count Eleven), [*Id.*].

Reece was ordered detained pending trial, [Doc. 6], and trial was scheduled for June 18, 2015, [Doc. 17]. The trial was continued on the motion of both defendants to September 10, 2015, [Doc. 22]. On August 20, 2015, Reece entered into a Rule 11(c)(1)(C) plea agreement with the government, [Doc. 26]. Reece agreed to plead guilty to Counts One and Two, conspiring to distribute heroin (Count One) and oxycodone (Count Two), [*Id.* at ¶ 1], and the government agreed to dismiss all other counts, [*Id.* at ¶ 2]. The parties agreed "that a sentence of 71 months, followed by three years of supervised release, is the appropriate disposition of this case," [Id. at ¶ 6].

Petitioner appeared before the Court on August 27, 2015, and entered pleas of guilty as to Counts One and Two, and the plea agreement was taken under advisement, [Doc. 29]. A presentence investigation report ("PSR") was ordered and sentencing set for January 11, 2016, [*Id.*]. The PSR was disclosed on November 30, 2015, [Doc. 45]. Based on the stipulated quantity of marijuana equivalent, the base offense level was 24, a two-level increase in the offense level was applied for possession of a dangerous weapon pursuant to United States Sentencing Guidelines Manual ("USSG") § 2D1.1(b)(1), and two levels were added pursuant to USSG § 2D1.1(b)(12) for

maintaining a premises for the purpose of manufacturing and distributing a controlled substance, resulting in an adjusted offense level of 28, [Doc. 45 at ¶¶ 19-21, 25]. After a three-level reduction in offense level for acceptance of responsibility pursuant to USSG § 3E1.1(a) & (b), the total offense level was, according to the probation officer, 25, [*Id*. at ¶¶ 27-29]. Reece had a criminal history category of I, resulting in an advisory guidelines range of 57 to 71 months' imprisonment, [Id. at ¶ 61].

Petitioner originally gave notice that he had no objections to the PSR, [Docs. 47, 52]. His subsequent motion, however, to late file objections was granted, [Docs. 54, 61], and Petitioner then objected to the enhancement for possession of a firearm. The Court heard witnesses and argument on the objection on January 11, overruled the objection, and adopted the PSR, *see generally* [Doc. 111]. The Court then accepted the Rule (11)(c)(1)(C) agreement and imposed the agreed upon 71 month sentence, [Doc. 62]. Judgment was entered on January 13, 2016, [Doc. 63]. No direct appeal was taken and the instant § 2255 motion was timely filed on May 12, 2016, [Doc. 75].

In his plea agreement, Reece stipulated to the following facts:

On July 11, 2013, agents with the DEA and members of the Elizabethton Police Department Vice Unit (EPD) conducted a controlled purchase of heroin from the defendant. A confidential informant (CI) prearranged the purchase of 20 bindles of heroin. The CI, wearing electronic monitoring equipment, planned to meet with the defendant at the Wal-Mart in Elizabethton, Tennessee. While en route, the defendant called the CI and changed the location to the Elizabethton, Tennessee Lowe's parking lot. The defendant indicated he would be in a red Honda. The CI arrived at Lowe's. Several minutes later, the officers observed a red Honda pull next to the CI's vehicle. At this time, the CI purchased 20 bindles of heroin from the defendant for $200. Each bindle was stamped with a skull and the word "Punisher." The red Honda's tag was traced to co-defendant Kathy Reece. Kathy Reece and the couple's son were also in the vehicle with the defendant. A DEA lab report confirmed that the substance was heroin.

On July 20, 2013 members of the EPD conducted a controlled purchase of heroin from the defendant. The CI arranged to purchase thirty bindles of heroin. The CI was provided with electronic recording equipment and photographed U.S. currency. Upon arriving at the meeting location at Lowe's in Elizabethton, Tennessee, officers

observed two Honda CRVs pull in next to the CI's vehicle. The defendant was driving a black CRV. Tim Mayse and a small child were also in the vehicle with the defendant. The second CRV was being driven by co-defendant Kathy Reece. During the transaction, Kathy Reece exited her vehicle, came over to the defendant's vehicle, and spoke to the CI. The CI purchased 30 bindles of heroin from the defendant. Each bindle was stamped with a skull and "Punisher." A DEA lab report confirmed that the substance was heroin. Immediately after the transaction, the two CRVs were observed exiting the Lowe's parking lot and parking next to a vehicle at Wal-Mart. A quick hand-to-hand transaction occurred between the defendant and a Hispanic male.

On October 9, 2013 agents of the DEA and members of the EPD, utilizing the CI, conducted a controlled purchase of heroin from the defendant. The CI arranged, by telephone, to purchase 70 bindles of heroin. The CI was provided with electronic recording equipment and photographed U.S. currency. The defendant and the CI engaged in several phone conversations over the course of approximately two hours in an attempt to determine a meeting location. At approximately 3:50 p.m., co-defendant Kathy Reece called the CI and indicated that the meeting would take place at the Elizabethton Food City parking lot. Then, at approximately 4:00 p.m., Kathy Reece called the CI and indicated that the meeting would now take place at an Elizabethton car wash. Upon arriving at the meeting location, a car wash on West Elk Ave., Elizabethton, Tennessee, the defendant was accompanied by co-defendant Kathy Reece. The CI purchased 70 bindles of heroin from the defendant. The phone call the CI placed to the defendant, to arrange the purchase, was placed to the defendant's home landline, confirming he was at home. The defendant was then observed leaving his residence, 474 Whaley Town Road, Butler, Tennessee, and was followed by agents to the meeting location.

On June 27, 2014 agents of the DEA and members of the EPD, utilizing a CI, conducted a controlled purchase of 72 bindles of heroin from the defendant. The CI was provided with electronic recording equipment and photographed U.S. currency. The defendant and co-defendant, Kathy Reece, arrived at the meeting location, the Elizabethton, Tennessee Ingles parking lot, driving a black Jaguar. The CI purchased 72 bindles of heroin from the defendant. The phone call the CI placed to Reece to arrange the controlled purchase was placed to Reece's home landline, confirming Reece was at home. William Lester REECE was also observed leaving his residence at 474 Whaley Town Road, Butler, Tennessee and was followed by agents to the meeting location.

On November 25, 2014 agents of the DEA conducted a controlled purchase of 100 bindles of heroin from the defendant by the CI. The CI called the defendant on the defendant's home (landline) phone. The defendant told the CI to just come to his house to buy the heroin. The CI was provided with electronic recording equipment and photographed U.S. currency. The CI went to 474 Whaley Town Road, Butler, Tennessee. The CI entered the residence and purchased 100 bindles of heroin from the defendant, which were packaged in a prescription pill bottle.

On December 18, 2014, agents of the DEA, EPD, and Carter County Sheriff s Department executed a federal search warrant at the residence of the defendants. Officers made entry into the master bedroom, which was secured with a padlock. This room was shared by the defendant and co-defendant, Kathy Reece. Two prescription bottles containing bindles of heroin were found sitting on a desk in the bedroom. A locked safe was located in the master bedroom. The safe contained a plastic bag containing 599 heroin bindles. Another plastic bag contained hundreds of oxycodone tablets. The safe also contained $88,100 in cash. Two Ruger semi-automatic pistols were found under the pillows of the bed in the master bedroom. Both pistols were loaded but not chambered. One pistol was a 9mm, model P89. The other was a 9mm, model P95DC. Several boxes of ammunition were recovered from the bookshelf in the bedroom.

The defendant admitted that he was conservatively responsible for conspiring to distribute 200 grams of heroin and 17 grams of oxycodone.

[Doc. 26 at ¶ 4].

## II.     Standard of Review

This Court must vacate and set aside Petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is

without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir. 1978), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Claims other than those of ineffective assistance of counsel are procedurally defaulted if not raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). *See also Bousley*, 523 U.S. at 622-23. This hurdle a petitioner faces to excuse procedural default is "intentionally high[,]… for respect for the finality

of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Further, federal inmates are not entitled to relitigate claims that were raised and considered on direct appeal absent an intervening change in the law, or other such extraordinary circumstance. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

## III. Analysis

Petitioner's original § 2255 motion, [Doc. 75], was not filed using the form appended to the Rules Governing Section 2255 Proceedings For The United States District Courts; rather, it was typewritten. It raised three grounds: (1) that the enhancement pursuant to § 2D1.1(b)(1) breached the plea agreement; (2) the prosecutor engaged in prosecutorial misconduct; and (3) ineffective assistance of counsel. In his August 4, 2016 motion to amend, Petitioner claims the Court "committed plain error when it allowed [Petitioner's] sentence to be enhanced by 2 levels under 2D1(b)(1)[sic]," [Doc. 79]. On December 20, 2016, Petitioner filed a second motion to amend in which he asserts that he "has recently received the correct forms that he was supposed to use to file the 2255" and "wants to replace his previously-filed motion with the attached motion, which is on the correct forms," [Doc. 86]. The government acknowledges that the second motion to amend was filed within the one-year statute of limitations. For that reason, the operative motion is the one filed on December 20.

Petitioner raises three grounds for relief in his amended motion: (1) counsel was ineffective in advising Reece to accept the plea agreement; (2) counsel was ineffective for not advising him he could plead guilty to the drug counts, go to trial on the gun counts, and still get an offense level reduction for acceptance of responsibility (as long as he was acquitted on the 924(c) charge); and (3) counsel was ineffective because he "did not properly brief and argue the fact that

the gun enhancement should not apply," [Doc. 86 at 14]. The government responded that Petitioner's claims are barred by the collateral attack waiver contained in the plea agreement, have been procedurally defaulted in part (as to the validity of his plea agreement and sentence), and lack merit. Because the claims lack merit, the Court will not address the waiver and procedural default arguments raised by the government and will instead address the claims on the merits.

## A. USSG §2D1.1(b)(1)

Each of Petitioner's claims of ineffective assistance of counsel involves the question of whether the Court properly applied USSG § 2D1.1(b)(1)'s two-level enhancement in calculating Petitioner's advisory guidelines range. Because that question is largely dispositive of Reece's ineffective assistance claims, the Court will first examine its application of the enhancement.

The 2015 Guidelines Manual was used to calculate the advisory guidelines range in Petitioner's case. Section 2D1.1(b)(1) provides for a two-level increase in the base offense level "[i]f a dangerous weapon (including a firearm) was possessed." USSG § 2D1.1(b)(1)(2015). The commentary to the guidelines indicates that the enhancement "reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*, comment. app. n.11.

Applying the § 2D1.1(b)(1) two-level enhancement has two parts. First, the government has the burden of proving by a preponderance of the evidence that the defendant either actually or constructively possessed the firearm. *United States v. Solorio*, 337 F.3d 580, 599 (6th Cir. 2003). "To establish constructive possession, the government must show that the defendant had ownership, dominion, or control over the [firearm] or dominion over the premises where the [firearm] is located." *Id.* (quoting *United States v. Miggins*, 302 F.3d 384, 390-91 (6th Cir. 2002), *cert. denied*,

537 U.S. 1097 (2002-03)). "[T]he burden [then] shifts to the defendant to demonstrate that it was clearly improbable that the weapon was connected to the offense." *Id.* The enhancement is applied unless the defendant can make this showing.

The probation officer applied the enhancement, [PSR at ¶ 20], on the basis that two loaded Ruger semi-automatic pistols were found in the Petitioner's residence in the master bedroom shared by Petitioner and his co-defendant and wife, Kathy Jean Reece. [*Id.* at ¶ 12. The firearms were located under the pillows of Petitioner's bed. Inside a locked safe in the bedroom agents executing a search warrant found 599 heroin bindles, hundreds of oxycodone tablets, and more than $88,000 cash. [*Id.*; *see also* Doc. 26 at 4]. About two weeks earlier, a confidential informant had purchased 100 bindles of heroin from Reece at the residence. Several boxes of ammunition, including 9mm ammunition, was recovered from the bedroom bookshelf. [PSR at ¶ 12].

Petitioner at first acknowledges that the government "established . . . constructive possession." [Doc. 79 at 2]. On the other hand, Petitioner, in a somewhat confusing argument, claims that the "Government failed to prove and :[sic] intent to exercise control over the weapons" and thus did not meet its burden of proof. [*Id.*].[2]

To the extent petitioner claims that the government failed to meet its initial burden, the Court disagrees. The loaded firearms were in Petitioner's residence, under the pillows of Petitioner's bed in the master bedroom, where Petitioner was clearly conducting his illegal drug business. That proof alone is sufficient by a preponderance of the evidence to meet the government's burden.

---

[2] Petitioner appears to argue that it is no longer sufficient for the government to prove that Petitioner had dominion over the premises where the firearms were found for § 2D1.1(b)(1) to apply, citing *Henderson v. United States*, 138 S. Ct. 1780 (2015). *Henderson*, however, does not support that claim and is completely inapposite in that it had nothing to do with the § 2D1.1(b)(1) enhancement. *See United States v. Clisby*, 636 F. App'x 243 (6th Cir. 2016) (decided by the Sixth Circuit six months after *Henderson* was decided by the Supreme Court).

Petitioner also argues that "[e]ven if the court should decide that constructive possession was enough," Petitioner "clearly" met his burden of showing that it was "clearly improbable that the weapon was connected to the offense." [*Id.* at 2-3]. Petitioner's burden is a difficult one to meet. *United States v. Clisby*, 636 F. App'x 243 (6th Cir. 2016) (affirming that § 2D1.1(b)(1) is a two-step burden shifting scheme and that the government meets its burden by proving either actual or constructive possession). As the Court noted at sentencing, the matter is largely one of credibility, that of William Lester Reece, Kathy Jean Reece, and Lisa Harrison, a neighbor of the Reeces who testified at the sentencing hearing. [Doc. 111 at 124]. The Court discussed at length the various and substantial inconsistencies in the testimony of the witnesses, [*Id.* at 125-28]. Then, as now, the Court found the explanations offered by Petitioner to be less than credible and Petitioner fell far short of meeting his burden to show that it was "clearly improbable" that the firearms were connected to the offense. There is little doubt that the § 2D1.1(b)(1) enhancement was properly applied in this case.

### B. Specific Claims of Ineffective Assistance of Counsel

Petitioner characterizes his claims as three separate claims of ineffective assistance of counsel. In reality, however, his claims overlap, are often repetitious, and are often based on conclusory allegations. The Court will, however, as best it can, address the claims it is able to discern.

### 1. Ground One

Petitioner claims counsel was "ineffective when he advised me to accept the plea agreement in this case." [Doc. 86-1 at 14]. According to Petitioner, counsel then told him "the plea agreement was for 71 months, that he had been able to get rid of the gun, and that [he] would be eligible for the year off for taking the RDAP . . . ," and that "with good time, [he] would do less

than four years in prison." [*Id*.].  Petitioner now claims that counsel never went over the sentencing guidelines "at all," did not properly calculate his guidelines range, and did not tell him he "could plead guilty to all the drug charges and still get acceptance of responsibility points under the guidelines after [being] acquitted on the 924(c) charge." [*Id*.].  By doing so, he could also "have preserved the right to appeal the gun enhancement." [*Id*.].

Most of these claims are plainly refuted by Petitioner's prior under-oath testimony.  For instance, at the change of plea hearing, Petitioner testified that he had read the plea agreement or had it read to him, that his attorney had explained all its terms and conditions, and that he "fully [understood] all the terms and conditions" of the plea agreement.  [Doc. 110 at 11].  Petitioner stated that he understood that he and the government had agreed to a total sentence of 71 months and that, upon acceptance of the plea agreement, the Court would "have no discretion to impose any sentence other than 71 months." [*Id*. at 12].  He testified that no promises of any kind had been made to induce to plead guilty, [*id*. at 15], that he understood that, if the plea agreement was accepted, a sentence of 71 months would be imposed, [*id*. at 16], that the Court would consider several factors, including his advisory guidelines range, before deciding whether to accept or reject the plea agreement, that he and his attorney "talked about how the [] advisory guidelines might apply" to his case, [*id*. at 34, 36-37], and, very importantly, that he understood that the sentence agreed upon, i.e., 71 months would be imposed "no matter what [his] advisory guideline range" turned out to be, [*id*. at 37-38].

The record thus clearly contradicts Petitioner's claim that counsel never "went over" the guidelines with him and that either his eligibility for a sentence reduction for participation in the RDAP program or assurance from counsel of "less than four years in prison" induced him to plead guilty.  Counsel's statement that the agreement was for 71 months was correct and Petitioner clearly

understood that he would be sentenced to 71 months regardless of the sentence suggested by the advisory guidelines. Furthermore, Petitioner's claims that counsel never advised him of his option to plead guilty on the drug offenses, go to trial on the 924(c) charge and be acquitted, and still receive a reduction in the offense level for acceptance and retain his right to appeal is flawed, because it assumes, in conclusory fashion, that he would indeed have been acquitted of the § 924(c) charge.

Section 924(c) provides that "any person . . . who in furtherance of [a drug trafficking crime], possesses a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. § 924(c)(1)(A)(i). Thus, had Reece been convicted on Count Fourteen of the indictment, he would have faced a consecutive 5-year mandatory minimum term of imprisonment. Although Reece claims "there is absolutely no way they could have convicted me on the 924(c) charge at any trial," just the contrary is true.

To establish a violation of 18 U.S.C. § 924(c)(1), "the government must prove that: (1) the defendant committed a drug trafficking crime; (2) the defendant knowingly possessed a firearm; and (3) the possession of the firearm was in furtherance of the drug trafficking crime." *United States v. Hornbeak*, 575 F. App'x 618, 623 (6th Cir. 2014) (quoting Sixth Circuit Criminal Pattern Jury Instructions § 12.03(1)(2014)). As to the third element, the following factors are considered: "(1) whether the gun was strategically located so as to be quickly and easily available for use during a drug trafficking offense; (2) whether the gun was loaded; (3) the type of gun; (4) the legality of its possession; (5) the type of drug activity conducted; and (6) the time and circumstances under which the firearm was found." *Id*. (citing *United States v. Gill*, 685 F.3d 606, 611 (6th Cir. 2012)).

Petitioner does not question that the first and third elements were established. Rather, he claims he could not be convicted because the government has "never had, and never will, have any evidence whatsoever that [he] possessed any firearms." [Doc. 86-1 at 14]. As set forth above, the Court has found, by a preponderance of the evidence, that Petitioner did possess a firearm, but the question here is different in that the standard of proof in a criminal trial is beyond a reasonable doubt. In other words, is there sufficient evidence which, if believed by a jury, would have supported a verdict of guilty on the firearm charge or, more specifically, on the second element of the offense?

As set forth above, two loaded firearms were found in the bedroom of Petitioner's residence, from which he conducted drug deals, under the pillows of the bed he shared with his wife and co-defendant, Kathy Jean Reece, in close proximity to drugs and a large amount of cash. Also as noted, there is no evidence that Petitioner actually possessed the firearms. To establish constructive possession, it must be shown that Petitioner "knowingly ha[d] the power and the intention at a given time to exercise dominion and control over the firearms, either directly or through others." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977), as recognized in *United States v. White*, 679 F. App'x 426, 434 (6th Cir. 2017). Constructive possession can be proven through either direct or circumstantial evidence. *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir 2009) (*en banc*). "Proof that a person has dominion over the premises where the firearm is located is sufficient to establish constructive possession." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir 1998) (citations and quotations omitted).

The Sixth Circuit has repeatedly found that constructive possession may be shown to exist if the contraband is located in a defendant's bedroom or personal living space. *See United States v.*

*Bridges*, -- F. App'x --, 2018 WL 3115804 at *4 (6th Cir. 2018) (citing *United States v. Malone*, 308 F. App'x 949, 952 (6th Cir. 2009) ("This Court has repeatedly and frequently held that constructive possession may be shown to exist if the contraband is found in a defendant's bedroom . . . .")); *see also United States v. Grubbs*, 506 F.3d 434, 440 (6th Cir. 2006) (no constructive possession shown where defendant was "temporary guest" in home where gun was found but noting that result would have been different if defendant "had some contact with the room where it was found"); *United States v. Coffee*, 434 F.3d 887 (6th Cir. 2006) (conviction upheld where firearms were found in closet of bedroom filled with defendant's belongings); *United States v. Hadley*, 434 F.3d 484 (6th Cir. 2005) (conviction upheld where firearm was found in armoire located in bedroom shared with wife, noting that "[a]t a minimum, then, the evidence would have permitted the inference that Defendant had constructive possession, if perhaps only jointly with his wife . . . .") (collecting additional cases) (Sutton, J., concurring); *United States v. Dunlap*, 209 F.3d 472 (6th Cir. 2000), *abrogated on other grounds by United States v. Camacho-Arellano*, 614 F.3d 244 (6th Cir. 2010) (conviction upheld when guns were seized at apartment for which defendant co-signed lease and in which he frequently conducted narcotics trade).

Here, as already noted, the firearms were found in Petitioner's residence inside a bedroom he shared with his co-defendant and wife, Kathy Jean Reece, under the pillows of their bed. That certainly is enough to allow, "[a]t a minimum . . . the inference that [Reece] had constructive possession, if perhaps only jointly, with his wife," of the firearms. But that is not all. The bedroom was filled with Petitioner's belongings, including a safe containing $88,000 in cash, 599 bindles of heroin, and hundreds of oxycodone pills. Two prescription bottles containing bindles of heroin were sitting on a desk in the bedroom. And, there is still more. One of the purchases of heroin made by the confidential informant occurred at the residence (100 bindles of heroin on November

25, 2014). The combined effect of all this leads to the inevitable conclusion that Petitioner could, in fact, have been convicted of possession of the firearms in furtherance of the drug trafficking crime.

Furthermore, it makes no difference that Reece had witnesses, including himself, to testify that he did not know of the presence of the firearms in the house. Had those witnesses testified at trial as to the gun count, the jury would have been called upon to make credibility determinations about those witnesses. As the Court has noted, the testimony of the witnesses was suspect and their credibility called into serious question. Indeed, the Court found them less than credible after the hearing on the § 2D1.1(b)(1) enhancement. In any event, given the centrality of their credibility and the nature of the other circumstantial evidence of Petitioner's possession of the firearms, the jury could clearly have found Reece guilty of the § 924(c) charge. Thus, even if counsel did not advise Petitioner of an option to plead guilty of the drug offenses and take the § 924(c) count to trial, Petitioner could not show any prejudice because his argument that he would, with certainty, have been acquitted is without merit.

The claims raised in Ground One lack merit.

## 2. Ground Two

The claims raised in Ground Two overlap and are related to the claims raised in Ground One. Generally, Petitioner faults counsel's advice to "accept the plea agreement," arguing once again that counsel "should have advised me that it was possible for me to plead guilty without the plea agreement, and that I would still be eligible for acceptance of responsibility as long as I was acquitted on the 924(c) charge (assuming the government was foolish enough to take me to trial on it.). I could have pled guilty to all drug charges in the indictment, and pled not guilty to the gun charge, which my attorney never told me . . . ." [Doc. 86-1 at 14]. He claims his lawyer "never

explained that under the United States Sentencing Guidelines' relevant conduct provisions, the number of counts I pled guilty to was irrelevant, and that my guidelines level would have been the same whether I pled to one drug count, two drug counts, or all of the drug counts." [*Id.*]. Reece claims counsel told him that if he withdrew from the plea agreement, he "would get 20 years."

As noted, this ground is largely a rehash of the first. To the extent Reece's argument is supported by his assertion that he would have been acquitted of the § 924(c) charge, the claim fails for the reasons stated above. As for counsel's advice that Reece accept the offered plea agreement, Petitioner can show no deficient performance. In fact, counsel likely would have been ineffective had he advised Petitioner ***not*** to accept the plea agreement. The government offered the Rule 11(c)(1)(C) plea agreement assuring Petitioner of a 71-month sentence and allowing him to avoid the very real possibility of a 5-year mandatory, consecutive sentence on Count Fourteen. Given Petitioner's potential sentencing exposure on Count Fourteen and the distinct possibility that he would have been convicted on the § 924(c) charge (and losing the three-level reduction in offense level for acceptance of responsibility in the process), he can show neither that counsel's advice was ineffective nor that he was prejudiced by it.

### 3. Ground Three

Petitioner's claims here are again similar to those in the first and second grounds. He claims that counsel was ineffective "because he was unprepared" at the sentencing hearing. Reece does not specifically identify what more counsel could have done at sentencing except to cite several cases that, presumably, would have caused the Court to decide the § 2D1.1(b)(1) objection in his favor, had they only been called to the Court's attention by counsel, [Doc. 86-1 at 15]. He also faults counsel for not citing *United States v. Williams*, 894 F. 2d 208, 211-13 (6th Cir. 1990) "to argue that applying the gun enhancement to me, when i[sic] did not possess the firearms, while

NOT applying it to my wife, who did possess them, would be inequitable and impermissible under Sixth Circuit case law." [*Id.*].

It is true that counsel filed a late objection as to the § 2D1.1(b)(1) enhancement. It is likewise true that, as a basis for his motion for the Court to accept the late-filed objection, counsel stated that he had "overlooked [the] objection" in light of the Rule 11(c)(1)(C) nature of the plea agreement, and had been involved in a 4-day first-degree murder trial from December 7-10, 2015, which "undoubtedly affect[ed his] attention to [the] objection," [Doc. 54-1 at 1]. There are no facts alleged by Petitioner to support his claim that counsel was unprepared on January 11, 2016, the date of the sentencing hearing and the Court's review of the transcript of the sentencing hearing establishes just the opposite. Counsel called three witnesses at the hearing on the objection and made appropriate argument to the Court, [Doc. 111]. Counsel was not ineffective "because he was unprepared."

Petitioner also faults counsel for not calling certain cases to the Court's attention, presumably believing that, had counsel done so, the Court's ruling would have been different. But a review of those cases does not support a claim that the Court's decision was incorrect or that these cases would have been persuasive on the enhancement. Petitioner cites the following cases: (1) *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996); (2) *United States v. Bailey*, 553 F.3d 940, 945 (6th Cir. 2009); (3) *United States v. Lucas*, 282 F.3d 414, 423-25 (6th Cir. 2002); (4) *United States v. Woods*, 604 F.3d 286, 290-93 (6th Cir. 2010); and (5) *United States v. Cochran*, 14 F.3d 1128, 1132-33 (6th Cir. 1994). None of these cases, however, indicate that the Court reached an incorrect decision on the § 2D1.1(b)(1) enhancement. In fact, they actually support the Court's resolution of the objection.

In *Hill*, in a case factually similar to Petitioner's, officers found a semi-automatic pistol in the top drawer of a dresser in the master bedroom. Hill claimed the § 2D1.1(b)(1) enhancement should not apply because his girlfriend, with whom he lived, testified that someone else owned the firearm and that she kept it in the apartment for protection. The Sixth Circuit affirmed the district court's finding that it was "not clearly improbable that the weapon was connected with the [drug] offense because even if the firearm was in the house for the [girlfriend's] protection, the gun could be jointly possessed and was located in a residence to which Hill had full access and where drugs were found." 79 F.3d at 1485-86. In *Bailey*, officers found a firearm under the seat of an automobile defendant was driving, a vehicle he did not own but had borrowed. The Sixth Circuit held that proof of constructive possession requires more than just presence of the firearm; rather, the government "must offer evidence to prove that the defendant (1) knew that the thing was present, and (2) intended to exercise [] dominion or control over it" and required "some action, some word, or some conduct that links the individual" to the firearm, at least in cases where the defendant denies any knowledge of it. 553 F. 3d at 945. Later cases from the Sixth Circuit have established, however, that "the question of evidence necessary to overcome *Bailey* is minimal . . . ." *United States v. Johnson*, 726 F. App'x 393, 405 (6th Cir. 2018) (quoting *United States v. Walker,* 734 F.3d 451, 452 (6th Cir. 2013)). Here, as set forth above, the government offered evidence beyond mere presence of the firearms.

In *Lucas*, unlike the present case, where the Sixth Circuit found there was no constructive possession, the government offered no proof that "Lucas owned the gun, owned the car he was driving, or even knew the gun was in the car's glove compartment," nor was the gun displayed, used, or otherwise involved in the offense. Lucas was not the sole occupant of the car and there was no evidence, including fingerprints, that he ever handled the firearm. 282 F.3d at 423-424,

*overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002) (*en banc*). *United States v. Woods*, 604 F.3d 286 (6th Cir. 2010), adds nothing to the holdings of the above cases and deals primarily with the question of whether it was reasonably foreseeable that a co-conspirator would possess a firearm. *United States v. Cochran*, 14 F.3d 1128 (6th Cir. 1994) is similar to *Woods*.

In short, counsel's performance in not citing these specific cases to the Court was not deficient nor can it reasonably be argued that to have done so would have changed the outcome. This claim lacks merit.

Finally, Reece argues that counsel should have cited *United States v. Williams*, 894 F.2d 208, 211-13 (6th Cir. 1990), to argue that applying the gun enhancement to him, but not to his wife, was impermissible. In *Williams*, the court found an abuse of discretion where the district court applied the § 2D1.1(b)(1) enhancement to two co-conspirators, but not to a third who actually possessed the firearm. Here, petitioner is simply mistaken when he argues that the gun enhancement was not applied in his wife's case. *See* [Doc. 46, PSR, *United States v. Kathy Jean Reece*, at ¶ 21 (applying 2-level enhancement pursuant to § 2D1.1(b)(1)]. This claim is clearly contradicted by the record and lacks merit.

### C. Miscellaneous Motions

As noted above, Reece has filed two motions for an expedited ruling on his § 2255 motion, [Docs. 90, 97]. In light of the Court's entry of this Memorandum Opinion and Order, the motions to expedite ruling are **DENIED as MOOT**. The first motion to compel, [Doc. 81], seeks an order of the Court requiring Petitioner's attorney to deliver to the Petitioner "any documents, or electronically stored information, including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, work product, discovery and any other

medium from which information can be obtained wither[sic] directly or, if necessary, after translation by the responding party into a reasonably usable form, and an[sic] designated tangible or personal property possessed or controlled by [his attorney], including vehicles." Petitioner makes no effort to show how this broad and somewhat vague request relates in any way to his § 2255 motion and it is therefore **DENIED**. The second motion to compel, [Doc. 88], although referred to by him as a motion to compel and docketed by the Clerk of the Court as such, is a largely nonsensical, incomprehensible missive which appears to bear no relation to Petitioner's motion and is **DENIED**.

### D. Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 75], will be **DENIED** and his motion **DISMISSED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the

certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473 (2000). Having examined each of petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of his claims was debatable or wrong. Therefore, the Court will **DENY** a certificate of appealability.

A separate judgment will enter.

ENTER:

_____s/J. RONNIE GREER_____
UNITED STATES DISTRICT JUDGE
